## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.

CRAIG NEMBHARD,

     Plaintiff,

vs.

THE CITY OF DORAL, a municipal
corporation, TRAVIS COOPER,
individually, MICHAEL LEAMEY,
individually, and JUAN FREYRE,
individually,

     Defendants.

_____/

## **<u>COMPLAINT</u>**

## **<u>INTRODUCTION, JURISDICTION, and VENUE</u>**

1.    This is an action for damages in excess of $75,000.00, arising out of one or more violations of State and Federal laws, detailed below.

2.    This action is brought pursuant to 42 U.S.C. §1983, 1988, and the Fourth, and Fourteenth Amendments to the United States Constitution, and the tort law of Florida. Jurisdiction is founded on 28 U.S.C. §1331, 1343, 42 U.S.C. §1988, the constitutional provisions mentioned above, and under the tort law of Florida.

3.    This action is brought by Plaintiff, CRAIG NEMBHARD,

("NEMBHARD"), whose rights were initially violated when he was illegally arrested, subdued, seized and searched by City of Doral ("CITY") police officers. His privacy rights were invaded. Then, the Defendant police officers escalated what had been a traffic citation encounter into a sadistic, malicious and gratuitous use of excessive force forewarned by a Defendant police officer's statement captured on his body camera video that "someone is about to get stomped on." Less than 30 seconds later, another Defendant police officer drew his gun on and then battered NEMBHARD with obviously excessive force, ripping him from his car slamming him to the ground with such force that it broke NEMBHARD's femur in half requiring surgery with the implantation of screws and a rod permanently disfiguring and scarring him, and resulting in permanent injuries. The Defendant police officers falsely arrested and imprisoned NEMBHARD, causing him to be wrongfully detained, illegally charged without probable cause, followed by a malicious prosecution that ultimately ended in no action being taken on the unsupported charges trumped up by the Defendant police officers. In connection with the acts and violations alleged below, the individual Defendant police officers have each violated the constitutional rights of NEMBHARD. Plaintiff seeks damages from the CITY and individual Defendant police officers.

2

4.      Venue is proper in this District because it is where the events complained about occurred.

5.      All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.

6.      NEMBHARD seeks awards of damages for permanent, physical, mental and emotional injuries, costs associated with criminal arrest including bondsman and criminal defense attorney charges, medical bills caused by Defendants' excessive force, and violations of his constitutional rights, loss of earning capacity, loss of enjoyment of life, punitive damages, court costs, attorneys' fees, and other damages as described more fully below.

## **PARTIES**

7.      NEMBHARD is over the age of 18 and a resident of Miami-Dade County, Florida.

8.      CITY is a political subdivision of the State of Florida.

9.      CITY, for the protection of its citizens and the enforcement of its laws and the laws of the State of Florida, operates the City of Doral Police Department ("DPD").

10.     DPD was operational at all times material, including on Thursday,

3

May 16, 2019, (hereinafter "DOI" for Date of Incident).

11.    TRAVIS    COOPER    ("COOPER"),    MICHAEL    LEAMEY, ("LEAMEY"), and JUAN FREYRE, ("FREYRE") (collectively "Defendants"), were at all times material employees or agents of CITY.

12.    On DOI, COOPER, LEAMEY and FREYRE were police officers with DPD.

## COMMON FACTUAL ALLEGATIONS

13.    On DOI at about 6:00 p.m., COOPER, LEAMEY and FREYRE were "conducting a traffic enforcement detail at the intersection of NW 79th Ave and NW 36th St., stopping vehicles using the center lane to travel north."

14.    COOPER, LEAMEY and FREYRE were using the Shell gas station located at the intersection (7900 NW 36th St) as their base for conducting the traffic enforcement detail, and one police officer would walk into the lane of traffic on NW 79th Ave and direct motor vehicles believed to be violating the traffic laws into the Shell gas station parking lot.

15.    The scene was chaotic due to regular rush hour traffic at the subject intersection, due to the large number of motor vehicles pulling into and out of the Shell gas station parking lot to get gas and to patronize the convenience store, as well as due to the DPD police officers on foot in the parking lot, in the lane of traffic, and due to the cars being directed by the

4

police officers to pull into the Shell gas station parking lot to receive traffic citations.

16.    On DOI at about 6:00 p.m., LEAMEY stepped into the lane of traffic and directed NEMBHARD into the Shell gas station even though NEMBHARD had not actually been using the center lane to travel north, was not violating any traffic laws, and was actually seeking to just purchase gas at the Shell gas station.

17.    NEMBHARD had moved into the center lane to turn left into the Shell gas station in order to lawfully get gas and had even turned on his turn signal to do so before LEAMEY directed him to pull into the parking lot.

18.    After pulling into the Shell gas station as directed and stopping his car, LEAMEY approached NEMBHARD's car on the driver's side contacting NEMBHARD through the driver's side window.

19.    NEMBHARD told LEAMEY that "I literally don't have any gas" but LEAMEY ignored him and falsely accused NEMBHARD of using the center lane to travel north.

20.    LEAMEY then requested that NEMBHARD provide LEAMEY with his driver's license and registration. NEMBHARD complied.

21.    LEAMEY then walked away from NEMBHARD, who remained in his car as he waited for LEAMEY to return.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

22.   At no time did NEMBHARD make any attempt to flee or physically resist receiving the traffic citation.

23.   LEAMEY returned to NEMBHARD's car and gave NEMBHARD a traffic citation (#A33F3OP) for "improper center lane use" --- a traffic violation NEMBHARD did not commit and for which NEMBHARD argued as such with LEAMEY.

24.   After receiving the traffic citation without violence, resistance or any attempts to flee, NEMBHARD lawfully reversed and pulled away from where the traffic citation was given to him and attempted to then navigate the chaotic parking lot scene to actually get gas at the Shell gas pumps as he had originally been attempting to do before being falsely accused of and written a traffic citation for "improper center lane use."

25.   Without any reason, COOPER then injected himself into the situation and also began arguing and yelling with NEMBHARD intentionally escalating the encounter that he was not even initially involved.

26.   COOPER told NEMBHARD, as NEMBHARD was driving away to "get gas over here" near where COOPER was standing, which was now located behind NEMBHARD.

27.   NEMBHARD slowly navigated his car using a three-point-turn required because of the chaotic scene in the Shell gas station caused by

6

Defendant police officers' traffic enforcement detail and regular customers at rush hour.

28.   NEMBHARD began slowly driving with his brakes pressed towards the open gas pumps, which were in COOPER's direction as COOPER stood in the parking lot amongst other cars maneuvering around in the parking lot.

29.   FREYRE can then be heard stating "someone is about to get stomped on" as he watched NEMBHARD slowly drive towards the gas pumps that were located in the direction of where COOPER was standing in the parking lot.

30.   As NEMBHARD's car came closer to COOPER in the direction of the open gas pumps, COOPER then pulled his weapon on NEMBHARD pointing it directly at him angrily yelling at NEMBHARD: "What? You coming forward on me boy? Get your ass out of the car! Get your ass out of the car! You pull up on me like you have a problem?"

31.   COOPER in violation of NEMBHARD'S constitutional rights, unlawfully detained and subdued NEMBHARD with the use of unreasonable force by drawing his gun and pointing it at NEMBHARD'S head, without probable cause or reasonable suspicion that NEMBHARD had committed a crime.

7

32.     NEMBHARD is heard responding: "What are you talking about? I'm just trying to get gas. What are you talking about?"

33.     NEMBHARD completely stopped his car as COOPER stood with his gun drawn pointing it directly at NEMBHARD effectively subduing him and detaining him.

34.     NEMBHARD did not try to flee or resist in any manner.

35.     COOPER angrily and violently tried to yank open NEMBHARD's passenger side door but could not because it was locked.

36.     FREYRE at this point joined the situation and drew his weapon and pointed at NEMBHARD's head while standing in front of the car further subduing NEMBHARD while his car was still stopped and there was no resistance or threat as NEMBHARD raised his hands in submission.

37.     COOPER quickly went around the car to the driver's side and violently attempted to pull NEMBHARD out of the open driver's side window, while the driver's door was closed, despite NEMBHARD providing no resistance or threatening actions and who still presented his hands in submission, while his vehicle was stopped.

38.     COOPER was not able to pull NEMBHARD out of the window not because NEMBHARD was resisting, but because COOPER simply could not physically accomplish the maneuver that was unnecessary in any event

8

because NEMBHARD was not resisting, was trying to get out as directed and had raised his hands in submission.

39.    LEAMEY then joined the situation again and opened the driver's side door of NEMBHARD's car without any resistance by NEMBHARD whose hands were still raised and all the while FREYRE was standing in front of NEMBHARD's car with his gun drawn and pointed at NEMBHARD's head and face.

40.     COOPER then grabbed NEMBHARD whose hands were still raised and to which NEMBHARD provided no resistance.

41.    COOPER next ripped NEMBHARD from his sitting position in the driver's seat with his hand up offering them to Defendant police officers and as NEMBHARD was cooperatively trying to step out of the car in submission with no resistance.

42.    COOPER then intentionally and without any reason slammed NEMBHARD to the ground, who was non-resisting and subdued, with such force that it broke his right femur --- the strongest bone in the body --- in half causing NEMBHARD to immediately begin screaming in excruciating pain.

43.    FREYRE then knelt on NEMBHARD's back and handcuffed him for no reason, causing further pain to NEMBHARD who was not physically resisting in way.

9

44.    On DOI, without probable cause and/or a reasonable suspicion that a traffic violation had occurred, LEAMEY illegally ordered NEMBHARD to pull his car over into the Shell gas station.

45.    On DOI, COOPER, LEAMEY and FREYRE without probable cause and/or a reasonable suspicion that a crime was afoot, illegally drew their weapons on, subdued, detained and ordered NEMBHARD to get out of his vehicle.

46.    At no time on DOI did NEMBHARD resist or pose a threat to COOPER, LEAMEY or FREYRE.

47.    NEMBHARD pulled over as directed, provided his vehicle registration and driver's license when requested, received the traffic citation issued by Defendant police officers, and moved his car as directed to get gas.

48.    NEMBHARD tried to comply with Defendant police officers' illegal orders to get out of his car but despite being subdued and detained at gunpoint, despite his hands being raised and despite providing no physical resistance, NEMBHARD was not given a reasonable opportunity to get out of his car before being intentionally and violently ripped out of his car at gunpoint with such force and being slammed to the ground that it broke his right femur in half.

10

49.    Defendant police officers violated the 4th Amendment rights of NEMBHARD by forcing him from his car at gunpoint while he provided no physical resistance and no threat with hands raised before slamming him to the ground and breaking his right femur in half.

50.    Due to his severe right leg injury, NEMBHARD could not get up off the ground or stand-up, was screaming in pain while COOPER, LEAMEY, FREYRE and other DPD police officers stood around and mocked him, smirked and told NEMBHARD things such as: "get up," "shut up" "its broken, you paralyzed remember" and "you picked the wrong person to play chicken with."

51.    Eventually, rescue was called and NEMBHARD was transported to Kendall Regional for emergency treatment and where he underwent surgery with the implantation of a rod and screws  to try and repair his broken femur.

52.    COOPER,   LEAMEY   and   FREYRE   illegally   arrested NEMBHARD without probable cause for contradictory alleged charges of "aggravated assault on a law enforcement officer" and "resisting arrest without violence."

53.    LEAMEY and FREYRE failed to intervene to stop clearly excessive and gratuitous force when COOPER battered NEMBHARD.

11

54.    NEMBHARD never physically resisted any of the Defendant police officers and never attempted to flee any of the Defendant police officers.

55.    NEMBHARD never threatened any of the Defendant police officers.

56.    NEMBHARD never battered any of the Defendant police officers.

57.    On DOI, NEMBHARD was not driving his vehicle in violation of the State of Florida's traffic laws.

58.    NEMBHARD was wrongfully charged with crimes including "aggravated battery on a law enforcement officer" and "resisting arrest without violence" and "improper lane use."

59.    In an effort to justify their conduct, each individual Defendant lied about different facts to set up and continue the prosecution of NEMBHARD.

60.    Despite efforts from COOPER, LEAMEY and FREYRE to have the prosecution continue, the State of Florida took no action on the criminal charges against NEMBHARD and failed to obtain a conviction on the traffic citation issued to NEMBHARD.

61.    On DOI, COOPER, LEAMEY and FREYRE were acting within the course and scope of their employment and under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

usages of the State of Florida and/or DPD.

62.   At the relevant time, COOPER, LEAMEY and FREYRE participated in a course of conduct which they knew, or reasonably should have known, was intended to and did result in abridgment and deprivation of NEMBHARD's rights and privileges, as secured under the Constitution of the United States of America.

63.   Defendants committed numerous egregious acts, including but not limited to the acts when they: jointly decided to arrest NEMBHARD despite knowing that he did not commit a crime; jointly decided to lie in order charge NEMBHARD with crimes, including a felony, despite knowing he did not commit any crime and in an effort to justify the severe injury NEMBHARD suffered.

64.   NEMBHARD was criminally prosecuted in Miami-Dade County in Case No. F-19-009813.

65.   On or about June 24, 2019, the State of Florida took no action on all pending charges against NEMBHARD.

66.   COOPER's, LEAMEY's and FREYRE's actions on DOI violating NEMBHARD's Constitutional rights and resulting in his severe physical and mental damages resulted in the opening of an internal affairs investigation

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

by CITY and/or DPD. However, despite the passage of nearly four (4) years, CITY and/or DPD has failed to conclude its internal affairs investigation in order to keep the investigation "open" so that COOPER, LEAMEY and FREYRE would not have any disciplinary action taken against them in order to prevent any evidence being created that could potentially be used against CITY, DPD, COOPER, LEAMEY and FREYRE in this action.

**COUNT I**
**42 U.S.C. §1983 VIOLATION OF NEMBHARD'S CIVIL RIGHTS**
**AGAINST CITY FOR NEGLIGENT FAILURE TO TRAIN AND**
**SUPERVISE DPD AND ITS POLICE OFFICERS, INCLUDING COOPER,**
**LEAMEY AND FREYRE**

67.     NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

68.     CITY owed the public, including NEMBHARD, a duty to properly train and supervise its personnel, including COOPER, LEAMEY and FREYRE, regarding the improper use of authority and appropriate procedures to follow when making an arrest and the proper use of force in making a lawful arrest.

69.     CITY breached its duty of care to NEMBHARD by failing to provide COOPER, LEAMEY and FREYRE, with proper and special training and/or supervision so that they could be prepared to execute that CITY could reasonably expect them to perform during the course and scope of their

14

employment.

70.     CITY's failure to train and supervise is evidence of a widespread policy and/or custom that constituted deliberate indifference DPD police officers, including COOPER, LEAMEY and FREYRE, used of excessive force and failure to secure probable cause before effectuating an arrest.

71.     CITY's policy and custom constitutes a deliberate indifference to NEMBHARD's constitutional rights, and the policy and custom led to NEMBHARD's false arrest/imprisonment, excessive and gratuitous use of force by COOPER, LEAMEY and FREYRE, against him, false testimony to support trumped-up criminal charges, and the malicious prosecution of NEMBHARD.

72.     CITY's and DPD's failure to do more than pay lip service to the egregious and obvious violation of NEMBHARD's Constitutional rights as described herein by COOPER, LEAMEY and FREYRE, by merely opening an internal affairs investigation without making any final determinations in the nearly four (4) years since so that it could still be classified as "open" to block release or providing any information to the public by way of the Freedom of Information Act, and to prevent the creation of any evidence that could potentially be used in this action against CITY, DPD, COOPER, LEAMEY and FREYRE.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

73.   CITY's and DPD's failures show the deliberate indifference, custom and practice of not only failing to properly train and supervise its police officers, including COOPER, LEAMEY and FREYRE, but also show CITY's and DPD's knowledge of the custom and/or practice, and the pervasive and not isolated events similar hereto such that they purposefully take affirmative action to prevent the public from obtaining information about incidents such as that herein, including dragging its proverbial feet for nearly four (4) years without closing the internal affairs investigation on COOPER, LEAMEY and FREYRE as relates to their violations of NEMBHARD's Constitutional rights described in this matter.

74.   As a direct and proximate result of the CITY's lack of proper training and supervision, COOPER, LEAMEY, and FREYRE, falsely arrested, falsely imprisoned, used excessive and gratuitous force, humiliated, embarrassed, and caused permanent injury and severe emotional distress to NEMBHARD.

75.   As a direct and proximate result of the CITY's failure to properly train and supervise DPD and its police officers, including COOPER, LEAMEY and FREYRE, NEMBHARD was deprived of his federal Constitutional rights, and suffered permanent injury and severe mental anguish.

16

WHEREFORE, NEMBHARD demands judgment against CITY for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

## COUNT II
## 42 U.S.C. §1983 VIOLATION OF NEMBHARD'S CIVIL RIGHTS AGAINST COOPER

76.    NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

77.    This Count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

78.    COOPER's actions on the DOI occurred within the scope of his employment with CITY and under color of state law.

79.    COOPER knew or should have known, and every reasonable officer in his position would have concluded, that there was no reason to stop or arrest NEMBHARD, as there was no probable cause or reasonable suspicion to believe he was committing a crime at any time while or anytime after he was originally pulled over for an alleged traffic citation.

80.    COOPER had a legal duty to use only that amount or degree of force against NEMBHARD as was reasonable and necessary under the

17

circumstances. Pursuant to the written policies of DPD, national police standards, and federal and state constitutional law, a police officer cannot use "excessive force," often defined as a level of force inappropriate to the circumstances, against members of the public.

81.    On DOI, COOPER used an excessive and unnecessary amount of force against NEMBHARD, which was objectively unreasonable in light of the facts and circumstances confronting COOPER and did not involve a rapidly evolving situation other than that created by COOPER, particularly considering that (a) he lacked reasonable suspicion or probable cause, (b) there was no actual traffic violation, (c) NEMBHARD posed no immediate threat to the safety of COOPER or any other person and (d) NEMBHARD was not actively or physically resisting arrest or attempting to evade arrest by flight.

82.    COOPER knew or should have known, and every reasonable officer in that position would have concluded that the force he used against NEMBHARD was unlawful.

83.    COOPER violated NEMBHARD's constitutional rights to be secure in his person, free from an unreasonable seizure, and free from the use of excessive force.

84.    These violations were of a type and character as to which any

18

reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional was clearly established.

85.    COOPER acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of NEMBHARD.

86.    As a direct and proximate result of COOPER's violation of NEMBHARD's civil rights, NEMBHARD has suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation, embarrassment, loss of capacity of the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and/or continuing and NEMBHARD will continue to suffer losses in the future.

87.    NEMBHARD has retained the undersigned attorney to prosecute this action on his behalf and has agreed to pay him a reasonable fee and to reimburse the costs of this action.

WHEREFORE, NEMBHARD demands judgment against COOPER for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

RASH MUELLER, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

## COUNT III
## FALSE ARREST/FALSE IMPRISONMENT AGAINST COOPER

88.    NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

89.    This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

90.    COOPER's actions on the DOI occurred within the scope of his employment with CITY and under color of state law.

91.    COOPER participated in the following which constituted false imprisonment or arrest of NEMBHARD: seizing, detaining and/or arresting NEMBHARD by: stopping his vehicle; drawing his gun on him; pointing his gun at NEMBHARD'S head; ordering him out of his vehicle; slamming him to the ground; breaking his femur; and further humiliating NEMBHARD while he was on the ground in pain and agony.

92.    The criminal offenses with which NEMBHARD was charged were known to COOPER to be patently false, without probable cause and/or not supportable under the law, albeit probable cause in a false arrest/imprisonment action is an affirmative defense, the burden of proof of which is the obligation of COOPER.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

93.   NEMBHARD was deprived of his liberty.

94.   The imprisonment or arrest and deprivation were against NEMBHARD's will.

95.   The imprisonment or arrest and deprivation of NEMBHARD by COOPER were unreasonable and unlawful.

96.   The imprisonment or arrest and deprivation were not based on lawfully issued process of Court and there was no valid warrant for the arrest of NEMBHARD.

97.   COOPER acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of NEMBHARD's rights.

98.   As a direct and proximate result of this conduct of COOPER, NEMBHARD has been injured, including but not limited to the following: physical injury; medical expenses; emotional distress; physical pain and suffering; mental pain and suffering; loss of capacity to enjoy life; loss of future earning capacity; loss of rights; imprisonment; discomfort; public humiliation and embarrassment; damage to his good name and reputation; fear; anxiety; loss of personal liberty; apprehension of going to a criminal trial and receiving a jail sentence; outrage; lost wages; financial losses; criminal attorney fees; civil attorney fees; the costs of bringing suit; and other general

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

damages.

WHEREFORE, NEMBHARD demands judgment against COOPER for compensatory and punitive damages, costs, reasonable attorney's fees and such other and further relief as the Court deems appropriate.

## COUNT IV
## 42 U.S.C. §1983 NEMBHARD'S CLAIM OF MALICIOUS PROSECUTION AGAINST COOPER

99.    NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

100.   This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

101.   A criminal judicial proceeding was commenced against NEMBHARD on the criminal charges levied against him, as indicated.

102.   The proceeding was instigated, at least in part, by COOPER, in the course and scope of his work as a police officer for DPD.

103.   The proceeding was instituted without probable cause as the facts observed by COOPER prior to arrest, and the matters known to COOPER before the institution of prosecution, would not have warranted a reasonable man to believe that NEMBHARD had committed any criminal offense.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

104.  COOPER, acting under color of authority during the course and scope of his employment, but motivated by malice and ill will, which is implied by the lack of probable cause and/or the express malice as shown by his reckless disregard for NEMBHARD's rights and his personal animosity and hostility towards NEMBHARD.

105.  COOPER made material misstatements of fact in support of the prosecution of NEMBHARD.

106.  No prosecution of NEMBHARD would have occurred but for the actions of COOPER.

107.  The fact of NEMBHARD's prosecution became known to many persons unknown to NEMBHARD as a result of being made part of the public records of Miami- Dade County and appearing on court documents available to public scrutiny as well as being posted on the internet and otherwise being made available to the public at large via various news media.

108.  The termination of the criminal proceeding against NEMBHARD was a bona fide termination or taking of no action in favor of NEMBHARD, and it was not a bargained-for result by NEMBHARD.

109.  42 U.S.C. §1983 provides a remedy for a violation of these rights, including compensatory and punitive damages which are hereby demanded.

23

110. As a direct and proximate result of this conduct of COOPER, NEMBHARD has been damaged, including but not limited to the following: medical expenses; emotional distress; physical pain and suffering; mental pain and suffering; loss of capacity to enjoy life; loss of future earning capacity; loss of rights; imprisonment; discomfort; public humiliation and embarrassment; damage to his good name and reputation; fear; anxiety; loss of personal liberty; apprehension of going to a criminal trial and receiving a jail sentence; outrage; lost wages; financial losses; criminal attorney fees; civil attorney fees; the costs of bringing suit; and other general damages.

WHEREFORE, NEMBHARD demands judgment against COOPER for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

### COUNT V
### 42 U.S.C. §1983 VIOLATION OF NEMBHARD'S CIVIL RIGHTS AGAINST LEAMEY

111. NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

112. This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

RASH MUELLER, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

113.  LEAMEY's actions on the DOI occurred within the scope of his employment with CITY and under color of state law.

114.  LEAMEY knew or should have known, and every reasonable officer in his position would have concluded, that there was no reason to stop or arrest NEMBHARD, as there was no probable cause or reasonable suspicion to believe NEMBHARD was committing a crime or attempting to commit a crime at any time while he was observed by LEAMEY.

115.  LEAMEY had a legal duty to use only that amount or degree of force against NEMBHARD as was reasonable and necessary under the circumstances. Pursuant to the written policies of DPD, national police standards, and federal and state constitutional law, a police officer cannot use "excessive force," often defined as a level of force inappropriate to the circumstances, against members of the public.

116.  On DOI, LEAMEY used an excessive and unnecessary amount of force against NEMBHARD, which was objectively unreasonable in light of the facts and circumstances confronting LEAMEY and did not involve a rapidly evolving situation other than that created by LEAMEY, particularly considering that (a) he lacked reasonable suspicion or probable cause, (b) there was no traffic violation, (c) NEMBHARD posed no immediate threat to the safety of LEAMEY or any other person and (d) NEMBHARD was not

25

actively physically resisting arrest or attempting to evade arrest by flight.

117. LEAMEY knew or should have known, and every reasonable officer in that position would have concluded that the force he used against NEMBHARD was unlawful.

118. LEAMEY violated NEMBHARD's constitutional rights to be secure in his person, free from an unreasonable seizure, and free from the use of excessive force.

119. These violations were of a type and character as to which any reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional was clearly established.

120. LEAMEY acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of NEMBHARD.

121. As a direct and proximate result of LEAMEY's violation of NEMBHARD's civil rights, NEMBHARD has suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation, embarrassment, loss of capacity of the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and/or continuing

26

and NEMBHARD will continue to suffer losses in the future.

122.   NEMBHARD has retained the undersigned attorney to prosecute this action on his behalf and has agreed to pay him a reasonable fee and to reimburse the costs of this action.

WHEREFORE, NEMBHARD demands judgment against LEAMEY for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

## COUNT VI
## FALSE ARREST/FALSE IMPRISONMENT AGAINST LEAMEY

123.   NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

124.   This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

125.   LEAMEY's actions on the DOI occurred within the scope of his employment with CITY and under color of state law.

126.  LEAMEY participated in the following which constituted false imprisonment or arrest of NEMBHARD: seizing, detaining and/or arresting NEMBHARD by: directing him to pull into the Shell gas station despite not

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

having committed any traffic offense, by then escalating, instigating and encouraging COOPER and FREYRE to use excessive force on NEMBHARD, by not intervening to stop a clear use of excessive force on NEMBHARD, and by COOPER and FREYRE.

127.   The criminal offenses with which NEMBHARD was charged were known to LEAMEY to be patently false, without probable cause and/or not supportable under the law, albeit probable cause in a false arrest/imprisonment action is an affirmative defense, the burden of proof of which is the obligation of LEAMEY.

128.   NEMBHARD was deprived of his liberty.

129.   The imprisonment or arrest and deprivation were against NEMBHARD's will.

130.   The imprisonment or arrest and deprivation were unreasonable and unlawful.

131.   The imprisonment or arrest and deprivation were not based on lawfully issued process of Court and there was no valid warrant for the arrest of NEMBHARD.

132.   LEAMEY acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of NEMBHARD's rights.

28

133.   As a direct and proximate result of this conduct of LEAMEY, NEMBHARD has been injured, including but not limited to the following: physical injury; medical expenses; emotional distress; physical pain and suffering; mental pain and suffering; loss of capacity to enjoy life; loss of future earning capacity; loss of rights; imprisonment; discomfort; public humiliation and embarrassment; damage to his good name and reputation; fear; anxiety; loss of personal liberty; apprehension of going to a criminal trial and receiving a jail sentence; outrage; lost wages; financial losses; criminal attorney fees; civil attorney fees; the costs of bringing suit; and other general damages.

WHEREFORE, NEMBHARD demands judgment against LEAMEY for compensatory and punitive damages, costs, reasonable attorney's fees and such other and further relief as the Court deems appropriate.

## COUNT VII
## 42 U.S.C. §1983 NEMBHARD'S CLAIM OF MALICIOUS PROSECUTION AGAINST LEAMEY

134.   NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

135.   This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

29

136. A criminal judicial proceeding was commenced against NEMBHARD on the criminal charges levied against him, as indicated.

137. The proceeding was instigated, at least in part, by LEAMEY, in the course and scope of his work as a police officer for DPD.

138. The proceeding was instituted without probable cause as the facts observed by LEAMEY prior to arrest, and the matters known to LEAMEY before the institution of prosecution, would not have warranted a reasonable man to believe that NEMBHARD had committed any criminal offense.

139. LEAMEY, acting under color of authority during the course and scope of his employment, but motivated by malice and ill will, which is implied by the lack of probable cause and/or the express malice as shown by his reckless disregard for NEMBHARD's rights and his personal animosity and hostility towards NEMBHARD.

140. LEAMEY made material misstatements of fact in support of the prosecution of NEMBHARD.

141. No prosecution of NEMBHARD would have occurred but for the actions of LEAMEY. The fact of NEMBHARD's prosecution became known to many persons unknown to NEMBHARD as a result of being made part of the public records of Miami-Dade County and appearing on court documents

30

available to public scrutiny as well as being posted on the internet and otherwise being made available to the public at large via various news media.

142.  The termination of the criminal proceeding against NEMBHARD was a bona fide termination of no action in favor of NEMBHARD, and it was not a bargained-for result by NEMBHARD.

143.  42 U.S.C. §1983 provides a remedy for a violation of these rights, including compensatory and punitive damages which are hereby demanded.

144.  As a direct and proximate result of this conduct of LEAMEY, NEMBHARD has been damaged, including but not limited to the following: medical expenses; emotional distress; physical pain and suffering; mental pain and suffering; loss of capacity to enjoy life; loss of future earning capacity; loss of rights; imprisonment; discomfort; public humiliation and embarrassment; damage to his good name and reputation; fear; anxiety; loss of personal liberty; apprehension of going to a criminal trial and receiving a jail sentence; outrage; lost wages; financial losses; criminal attorney fees; civil attorney fees; the costs of bringing suit; and other general damages.

WHEREFORE, NEMBHARD demands judgment against LEAMEY for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

31

## COUNT VIII
## 42 U.S.C. §1983 VIOLATION OF NEMBHARD CIVIL RIGHTS AGAINST FREYRE

145.   NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

146.   This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

147.   FREYRE's actions on the DOI occurred within the scope of his employment with CITY and under color of state law.

148.   FREYRE knew or should have known, and every reasonable officer in his position would have concluded, that there was no reason to stop or arrest NEMBHARD, as there was no probable cause or reasonable suspicion to believe he was committing a crime at any time while he was observed by FREYRE.

149.   FREYRE had a legal duty to use only that amount or degree of force against NEMBHARD as was reasonable and necessary under the circumstances. Pursuant to the written policies of DPD, national police standards, and federal and state constitutional law, a police officer cannot use "excessive force," often defined as a level of force inappropriate to the circumstances, against members of the public.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

150.  On DOI, FREYRE used an excessive and unnecessary amount of force against NEMBHARD, which was objectively unreasonable in light of the facts and circumstances confronting FREYRE and did not involve a rapidly evolving situation other than that created by FREYRE, particularly considering that (a) he lacked reasonable suspicion or probable cause, (b) there was no traffic violation, (c) NEMBHARD posed no immediate threat to the safety of FREYRE or any other person and (d) NEMBHARD was not actively physically resisting arrest or attempting to evade arrest by flight.

151.  FREYRE knew or should have known, and every reasonable officer in that position would have concluded that the force he used against NEMBHARD was unlawful.

152.  FREYRE violated NEMBHARD's constitutional rights to be secure in his person, free from an unreasonable seizure, and free from the use of excessive force.

153.  These violations were of a type and character as to which any reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional is clearly established.

154.  FREYRE acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of NEMBHARD.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

155.   As a direct and proximate result of FREYRE's violation of NEMBHARD's civil rights, NEMBHARD has suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation, embarrassment, loss of capacity of the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and/or continuing and NEMBHARD will continue to suffer losses in the future.

156.   NEMBHARD has retained the undersigned attorney to prosecute this action on his behalf and has agreed to pay him a reasonable fee and to reimburse the costs of this action.

WHEREFORE, NEMBHARD demands judgment against FREYRE for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

## COUNT IX
## FALSE ARREST/FALSE IMPRISONMENT AGAINST FREYRE

157.   NEMBHARD re-alleges paragraphs one (1) through sixty-six (66) and incorporates them by reference herein.

158.   This count is in the alternative as permitted under Fed. R. Civ. P.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

159.  FREYRE's actions on the DOI occurred within the scope of his employment with CITY and under color of state law.

160.  FREYRE participated in the following which constituted false imprisonment or arrest of NEMBHARD: seizing, detaining and/or arresting NEMBHARD by: drawing his gun on him and pointing it directly at him; handcuffing him; violently taking him to the ground and kneeling on his back.

161.  The criminal offenses with which NEMBHARD was charged were known to FREYRE to be patently false, without probable cause and/or not supportable under the law, albeit probable cause in a false arrest/imprisonment action is an affirmative defense, the burden of proof of which is the obligation of FREYRE .

162.  NEMBHARD was deprived of his liberty.

163.  The imprisonment or arrest and deprivation were against NEMBHARD's will.

164.  The imprisonment or arrest and deprivation were unreasonable and unlawful.

165.  The imprisonment or arrest and deprivation were not based on lawfully issued process of Court and there was no valid warrant for the arrest

35

of NEMBHARD.

166.  FREYRE acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of NEMBHARD's rights.

167.  As a direct and proximate result of this conduct of FREYRE, NEMBHARD has been injured, including but not limited to the following: physical injury; medical expenses; emotional distress; physical pain and suffering; mental pain and suffering; loss of capacity to enjoy life; loss of future earning capacity; loss of rights; imprisonment; discomfort; public humiliation and embarrassment; damage to his good name and reputation; fear; anxiety; loss of personal liberty; apprehension of going to a criminal trial and receiving a jail sentence; outrage; lost wages; financial losses; criminal attorney fees; civil attorney fees; the costs of bringing suit; and other general damages.

WHEREFORE, NEMBHARD demands judgment against FREYRE for compensatory and punitive damages, costs, reasonable attorney's fees and such other and further relief as the Court deems appropriate.

## COUNT X
## 42 U.S.C. §1983 NEMBHARD'S CLAIM OF MALICIOUS PROSECUTION AGAINST FREYRE

168.  NEMBHARD re-alleges paragraphs one (1) through sixty-six (66)

36

and incorporates them by reference herein.

169. This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

170. A criminal judicial proceeding was commenced against NEMBHARD on the criminal charges levied against him, as indicated.

171. The proceeding was instigated, at least in part, by FREYRE, in the course and scope of his work as a police officer for DPD.

172. The proceeding was instituted without probable cause as the facts observed by FREYRE prior to arrest, and the matters known to FREYRE before the institution of prosecution, would not have warranted a reasonable man to believe that NEMBHARD had committed any criminal offense.

173. FREYRE, acting under color of authority during the course and scope of his employment, but motivated by malice and ill will, which is implied by the lack of probable cause and/or the express malice as shown by his reckless disregard for NEMBHARD's rights and his personal animosity and hostility towards NEMBHARD.

174. FREYRE made material misstatements of fact in support of the prosecution of NEMBHARD.

RASH MUELLER, P.A.

1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

175.   No prosecution of NEMBHARD would have occurred but for the actions of FREYRE.

176.   The fact of NEMBHARD's prosecution became known to many persons unknown to NEMBHARD as a result of being made part of the public records of Miami-Dade County and appearing on court documents available to public scrutiny as well as being posted on the internet and otherwise being made available to the public at large via various news media.

177.   The termination of the criminal proceeding against NEMBHARD was a bona fide termination in favor of NEMBHARD, and it was not a bargained-for result by NEMBHARD.

178.   42 U.S.C. §1983 provides a remedy for a violation of these rights, including compensatory and punitive damages which are hereby demanded.

179.   As a direct and proximate result of this conduct of FREYRE, NEMBHARD has been damaged, including but not limited to the following: medical expenses; emotional distress; physical pain and suffering; mental pain and suffering; loss of capacity to enjoy life; loss of future earning capacity; loss of rights; imprisonment; discomfort; public humiliation and embarrassment; damage to his good name and reputation; fear; anxiety; loss of personal liberty; apprehension of going to a criminal trial and receiving a jail sentence; outrage; lost wages; financial losses; criminal attorney fees;

RASH MUELLER, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

civil attorney fees; the costs of bringing suit; and other general damages.

WHEREFORE, NEMBHARD demands judgment against FREYRE for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

CRAIG NEMBHARD hereby demands a jury trial on all issues so triable.

DATED this 11th day of May, 2023.

RASH MUELLER, P.A.
Attorneys for the Plaintiff
1655 North Commerce Parkway
Suite 303
Weston, Florida 33326
Telephone:  (954) 515-0072
Facsimile:   (954) 515-0073
Primary:     david@rashmueller.com
Secondary: jeff@rashmueller.com
                    maileidys@rashmueller.com

By:   /s/ David C. Rash
       DAVID C. RASH
       Florida Bar #977764
       JEFFREY D. MUELLER
       Florida Bar #103563

39